UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:17-CR-12 |
| v. | ) |
| | ) JUDGE GREER |
| STEVEN HILLIARD | ) |

### PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Steven Hilliard, and the defendant's attorney, Angela R. Morelock, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

Count One, that is, a conspiracy to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

The punishment for this offense is as follows: a minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, five years to life on supervised release, and a mandatory $100.00 assessment.

2. There are no remaining counts against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

On March 2, 2016, Tracy Arnold was interviewed at the Bristol, TN Police Department. Arnold stated that the crystal methamphetamine being sold in Sullivan County, TN was coming from Atlanta, GA. Arnold stated that he had made one (1) trip to Atlanta, GA with Missy Smith and purchased one (1) pound of crystal methamphetamine. Arnold stated that now he was supplied methamphetamine by Nickey Hatcher, with whom he lived. Arnold stated that Hatcher was supplied methamphetamine by Tim Green. Arnold stated that Green sold methamphetamine for Defendant. Arnold stated that Green was now making trips to Atlanta, GA and obtaining the methamphetamine for Defendant. Arnold stated that on February 28, 2016, Green returned from Atlanta and brought methamphetamine to Hatcher at their apartment in Church Hill, TN.

On March 11, 2016, Jacob Wade Armstrong was arrested in Bristol, Virginia in possession of approximately two (2) ounces of crystal methamphetamine. Subsequent to his arrest, Armstrong agreed to be interviewed by law enforcement. Armstrong stated the following:

Armstrong was a user and distributor of methamphetamine. Armstrong had been supplied methamphetamine in the past by Defendant and others. Defendant used to make trips to Georgia to obtain two (2) kilograms of crystal methamphetamine at a time, paying $18,000.00 per kilogram from Justin LNU, later determined to be Justin Faulkner. Defendant had recently used others to make trips for him, including Tim Green. Defendant was trying to distance himself as much as possible from the distribution of the methamphetamine, utilizing others to sell for him, and directing customers to deal directly with Tim Green. Defendant met Faulkner through Nathan Hogan. Faulkner had a brother named Nathan Hogan who used to supply Defendant with crystal methamphetamine.

Morrison's cellular telephone number was (423) 999-2463. Tammy Goodson's cellular telephone number was (423) 967-2328. Defendant's cellular telephone number was (423) 491-1710.

As the result of a DEA Administrative Subpoena served on Verizon Wireless, telephone toll records were received on the accounts associated with telephone number (423) 491-1710 (Defendant). These records revealed that Defendant had been in contact with telephone number (404) 951-5136 approximately 106 times between February 17, 2016 and March 12, 2016. According to the records of Cricket Wireless, the subscriber to telephone number (404) 951-5136 was Nathan Hogan at 1162 Rainey Rd., Temple, GA.

On June 8, 2016, Tracy Arnold was interviewed at the Sullivan County (TN) Sheriff's Office. Arnold stated that he was currently incarcerated for being in possession of several syringes containing a red liquid which he admitted was methamphetamine. Arnold stated that he was selling the methamphetamine for Tim Green. Arnold stated that the money seized that night belonged to Green.

Arnold stated that since Defendant was locked up, Green was supplying "everybody" with crystal methamphetamine. Arnold stated that Green was being supplied by Defendant's source in Atlanta, and was bringing back kilograms of crystal methamphetamine at a time. Arnold stated that he was selling four (4) to five (5) ounces of crystal methamphetamine each night for Green. Arnold stated that Quinton Hatcher, who used to sell crystal methamphetamine for Defendant, was now selling crystal methamphetamine for Green.

On June 29, 2016, a confidential source "CS-3" was interviewed in Johnson City, TN. CS-3 stated that he/she was introduced to Defendant by Michael Potter. CS-3 stated that he/she was introduced to Potter by Tammy Goodson from Bristol, TN. CS-3 stated that he/she supplied

3

Defendant with three (3) to four (4) kilograms of crystal methamphetamine per week for approximately eight (8) months.

On July 6, 2016, Defendant was interviewed at the Sullivan County (TN) Jail. Defendant stated that Michael Potter was his brother. Defendant stated that when Potter got arrested, Defendant collected $15,000.00 in drug debt owed to Potter and contacted Nathan Hogan. Defendant stated that he and Tim Green met Hogan in Georgia, and Green obtained methamphetamine and drove it back to Tennessee. Defendant stated that this occurred on many occasions, and he made a profit of $2,500.00 for every $15,000.00 invested. Defendant stated that over a four (4) month period, he made approximately $40,000.00 from the sale of methamphetamine.

On November 4, 2016, Quinton Hatcher was interviewed at the Sullivan County Jail in Blountville, TN. Hatcher stated that he had been selling methamphetamine since 2013. Hatcher stated that he was initially supplied methamphetamine by Defendant and sold one (1) or two (2) ounces per month for Defendant. Hatcher stated that for approximately six (6) months preceding the execution of the search warrant on Timothy Green's house, Hatcher sold one (1) or two (2) ounces of methamphetamine per day that was supplied by Green.

Defendant agrees that he conspired with his co-defendants to distribute methamphetamine (actual) and that he is responsible for the distribution of at least 500 grams but less than 1.5 kilograms of methamphetamine (actual).

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

4

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the

5

defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means

6

the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a)    If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b)    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c)    If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

7

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this

8

plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
UNITED STATES ATTORNEY

8/16/2017
Date

By: _____
J. GREGORY BOWMAN
Assistant United States Attorney

8/11/2017
Date

_____
STEVEN HILLIARD
Defendant

Aug. 11, 2017
Date

_____
ANGELA R. MORELOCK
Attorney for the Defendant

10